UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIL BEY,<br><br>    Plaintiff,<br><br>    v.<br><br>GEORGE GASCON, et al.,<br><br>    Defendants. | Case No. 19-cv-03184-WHO<br><br>**ORDER GRANTING REQUEST TO PROCEED IN FORMA PAUPERIS; DISMISSING COMPLAINT AND DENYING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. Nos. 1, 2, 3, 8, 11 |

Pro se plaintiff Jamil Malik Bey has filed a pleading titled Claim for Damages & Injunctive Relief that I construe as a complaint. ("Compl.") [Dkt. No. 1]. It names three state court judges, two state court clerks, the San Francisco District Attorney, the San Francisco Sheriff, twenty doe deputies of the Sheriff's Department, and two private individuals as defendants. *Id.* Bey brings multiple constitutional law claims under 42 U.S.C. § 1983, state law claims, and international law claims. He has filed an application to proceed *in forma pauperis* ("IFP"), which I grant. [Dkt. No. 3]. However, even if a plaintiff qualifies for IFP status, I must still examine the complaint to ensure that the complaint alleges non-frivolous claims that can be pursued in this court. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(ii). If a complaint is frivolous or fails to state a claim, the statute requires me to dismiss the case. 28 U.S.C. § 1915(e)(2). For the reasons described below, Bey's complaint is DISMISSED without leave to amend. His motion seeking permission for electronic case filing is denied as moot. [Dkt. No. 8].

**BACKGROUND**

**I. PROCEDURAL BACKGROUND**

On June 7, 2019, Bey filed the underlying Complaint and a motion for a temporary

restraining order. [Dkt. No. 2]. On June 17, 2019, Bey filed a pleading entitled "Affidavit of Facts of Jamil Malik Bey in Support of Preliminary Injunction," in which Bey appears to withdraw his motion for a temporary restraining order because the underlying criminal charges against him were dismissed without prejudice on June 12, 2019. ("Bey's Affidavit") [Dkt. No. 11]. I construe this as Bey withdrawing his motion for a temporary restraining order and instead seeking a preliminary injunction.

## II. FACTUAL BACKGROUND

Bey's Complaint is rambling and difficult to understand, but his claims appear to stem from a dispute regarding his property located in a storage unit owned by Bey's associate, Marimar Cornejo. Compl. ¶¶ 43, 56. On January 16, 2018, the storage unit company, Public Storage, filed a small claims lawsuit against Cornejo in the San Francisco County Superior Court, seeking to recover unpaid rent and fees or exercise its lien and sell property within the unit to satisfy the debt. Ex. D, Docket in *Public Storage v. Cornejo*, Case No. CSM-18-857198 [Dkt. No. 1-2]. Employee Amador Brenneman represented Public Storage and hired Eugene Lee as his counsel. Compl. ¶ 43; Ex. D. The small claims court did not recognize Bey as party to the action, and Bey unsuccessfully tried to enter an appearance as Cornejo's counsel. Compl. ¶ 51. Bey then attempted to file a special appearance as party in interest, claiming that he had substantial interest because he had property located in Cornejo's unit. *Id.* ¶ 56. On March 5, 2018, Judge Pro Tem Andrea McGary denied Bey's special appearance on behalf of himself and on behalf of Cornejo, but Bey claims that the judge eventually recognized his appearances and "acknowledge[d] the Power of Attorney agreement" between Cornejo and Bey. *Id.* ¶ 57. The underlying docket does not show such a recognition was ever made. *See* Ex. D. Bey's complaint against all defendants arose from what allegedly took place in that small claims case and the criminal charges that were subsequently filed against Bey.

### A. Small Claims Case, Where Bey is Non-Party
#### 1. Initial Hearing Before Judge Kiesselbach

The small claims case transferred to Judge Charlene Padovani Kiesselbach because Cornjeo did not stipulate to a judge pro tem adjudicating the lawsuit. *See* Ex. D. At a hearing

held on March 30, 2018, Bey again attempted to speak as a non-party. Compl. ¶ 59. Bey alleges that Judge Kiesselbach was biased against him because she recognized Bey from another case, *Cornejo v. Keypoint Credit Union*, and said that Bey was not allowed to be heard in the case because he was not party to it. *Id.* Bey further alleges that Deputy Nunes[1] told Judge Kiesselbach that Bey had a camera and intended to record the proceedings. *Id.* Judge Kiesselbach then ordered Bey to erase the recording or be held in contempt of court. *Id.* ¶ 63. Bey claims that Deputy Nunes seized the recording device, allegedly located in Cornejo's purse, without a warrant. *Id.* Judge Kiesselbach ordered that Bey leave the courtroom or be held in contempt of court. *Id.* ¶ 66. Bey further alleges that before he could leave, Judge Kiesselbach ordered deputies to seize him a again because "one deputy stated that he believes [Bey] may have another recording device in [his] pocket." *Id.*

Subsequently, Bey claims that Cornejo moved to recuse Judge Kiesselbach and that Kiesselbach accepted this challenge for recusal for being prejudicial towards Cornejo and Bey. Compl. ¶¶ 72, 74. While the docket shows that the case was reassigned to Judge Gail Dekreon, it does not reflect the reasons for recusal. *See* Ex. D. On May 1, 2018, the court denied Cornejo's request to transfer the case from small claims to superior court. *See id.*

### 2. Final Judgment Entered in Small Claims Case

On May 2, 2018, Judge Dekreon entered judgment against Cornejo, ordering Cornejo to pay Public Storage the unpaid rent within 30 days or Public Storage would be authorized to sell the property contained in the unit. *See* Ex. D. The docket reveals that Bey, as non-party, attempted to file an appeal on Cornejo's behalf. *Id.* The court eventually accepted the appeal on Cornejo's consent. *Id.* On July 18, 2018, the court affirmed the small claims judgment and ordered Cornejo to pay Public Storage unpaid rent within 45 days or Public Storage would be authorized to sell the property contained in the unit. *See* Ex. D; Ex. E, July 18, 2018 Judgment [Dkt. No. 1-2].

---

[1] The Complaint does not provide Deputy Nunes' first name.

### 3. Public Storage Preemptively Sold Property in Unit

Following final judgment, Public Storage sold Cornejo's property located in her unit before the 45-day deadline set forth in the July 18, 2018 order. Compl. ¶ 78; Ex. F, Order to Show Cause [Dkt. No. 1-2]. Bey seems to argue that his property was also improperly sold because Cornejo's storage unit allegedly contained some of his property too. *Id.* On August 31, 2018, Cornejo filed an order to show cause why Public Storage should not be held in contempt because it sold the property before 45 days had run. *See* Ex. F.

Judge Harold E. Kahn ordered Public Storage to appear in court on September 5, 2018 and provide the court and Cornejo with any and all contact information of people and entities to whom the goods were sold. Compl. ¶ 79; Ex. F. Although Brenneman and Lee did not initially bring the requested information at the September 5, 2018 hearing, the matter continued to the following day when the requested information was provided. *See* Ex. D (docket entries on September 6, 2018 and September 7, 2018). The court ultimately did not find Public Storage in contempt of court for preemptively selling the property within the unit because it found that the appellate order on July 18, 2018 was vague and ambiguous. *See* Ex. D (docket entry on October 1, 2018). No further filing have been made and it appears that the case has been closed. *See id.*

### 4. Altercation Between Bey, Brenneman and Lee

The rambling Complaint reflects Bey's frustration following the September 5, 2018 hearing when Brenneman and Lee requested more time to provide the requested information on who bought Cornejo's property. After the hearing adjourned, Lee claims that Bey confronted him and Brenneman outside the courtroom. Ex. I, Lee's September 5, 2018 Letter to Judge Kahn [Dkt. No. 1-2]. Lee filed a letter with Judge Kahn recounting the incident, which states that Bey physically threatened both Lee and Brenneman and told them that he would come after them and kill them. Ex. I. Lee states that Brenneman and Lee attempted to walk away from Bey but Bey continued to threaten and yell at them. *Id.* Lee further states that both of them turned the block to seek shelter and wait until Bey was gone before returning to their respective offices. *Id.* Bey claims that Brenneman and Lee falsely accused him of making threats against them. Compl. ¶ 80.

Bey argues that Lee and Brenneman conspired against him by filing a police report in

order to destroy Bey and Cornejo's credibility. Compl. ¶ 42; *see also* Ex. G, San Francisco Sheriff's Department Arrest by Private Person Forms [Dkt. No. 1-2]. Bey further believes that Lee conspired with judges to obtain a warrant. Compl. ¶ 82. Bey claims that Lee approached Judge Kahn to issue a warrant and that Judge Kahn purportedly refused. *Id.* Bey then claims that Lee went to Judge Kiesselbach, who was previously recused, to help him get a warrant for Bey's arrest. *Id.* ¶ 82. Bey believes that Judge Kiesselbach, Brenneman, and Lee were in conspiracy with the District Attorney to bring these criminal threat charges against him. *Id.* ¶ 83. During his arrest, it appears Bey resisted giving officers a DNA sample as part of the booking procedure. *Id.* ¶¶ 216–17. Bey alleges that he was in custody for 29 hours. *Id.* ¶ 214.

### B. Criminal Case Against Bey

#### 1. Initial Hearing Before Judge Woods

On September 7, 2018, San Francisco District Attorney George Gascon filed a felony complaint against Bey for two counts of criminal threats against Brenneman and Lee and one count of refusal or failure to provide specimen. *See* Ex. J, Felony Complaint in *People of California v. Bey*, Case No. 18-012876 [Dkt. No. 1-2]. Judge Branden Woods conducted the initial proceedings in Bey's criminal case on September 12, 2018, and assigned Crystal Lamb, a public defender, as Bey's counsel. *Id.* ¶¶ 31, 33, 34. Lamb has not been named a defendant in this lawsuit, but Bey claims Judge Woods appointed Lamb without his consent. *Id.* ¶ 35.

Bey claims that both Judge Woods and Lamb were biased against him. *Id.* It appears that Bey did not want Lamb as his counsel because he sought to argue that the court lacked jurisdiction over him as a sovereign citizen of "Moorish American" descent. *Id.* ¶¶ 9, 32; *see also* Ex. A, Bey's Purported Moor-American Nation Treaty [Dkt. No. 1-1]. Bey believes that appointment of Lamb waived his right to raise the argument about his true identity as a non-U.S. and non-Californian citizen, but rather someone who is "domiciled on Ancestral Lands as one of the living divine Autochthonous people." Compl. ¶¶ 32, 37. He also claims that Frances Yokota, a state court clerk, violated his due process rights by delaying his request for a certified copy of the record and the charging document for several weeks. *Id.* ¶ 106.

Bey also claims that he was denied the "material knowledge of the identity of the Plaintiff"

5

in his criminal case, but it appears that he thinks the criminal charges should have been brought by Lee and Brenneman directly instead of through the state of California. *Id.* ¶ 252. It appears that Bey believes criminal charges are brought directly by the alleged victims and not through the "people of California"; he does not understand why the state of California is a "party" to the criminal case because it does not have a "valid interest" in the matter between him, Brenneman and Lee. *Id.* ¶¶ 249–50.

### 2. Preliminary Hearing Before Judge Caffese

On April 4, 2019, Judge Teresa M. Caffese held a preliminary hearing in Bey's criminal case. Compl. ¶ 158. Bey claims that Judge Caffese also acted without jurisdiction over him as a "Moor American National," and denied him his right to be heard. *Id.* ¶¶ 158, 159. Bey alleges that Deputy Chan[2] appeared at the preliminary hearing and testified that he conducted a warrantless search after receiving "hearsay statements from Lee and Brenneman." *Id.* ¶ 161. Bey also claims that his due process rights were violated by Melinka Jones, a state court clerk, because she refused to accept his documents to be filed with the court. *Id.* ¶ 105.

### 3. Injunctive Relief Sought

The criminal charges against Bey were dismissed without prejudice. *See* Bey's Affidavit ¶ 8. Bey now seems to seek to enjoin the state of California from "exercising judicial and executive powers" over him and from "prosecuting [him] under the facts and claims in the said matter *People v. Bey*." Compl. ¶ 248. Bey believes that the San Francisco District Attorney, George Gascon, and all other state defendants in this case are all "corporate agents" of the so-called corrupt "agency" of California. *Id.* ¶ 245. Bey also seeks monetary damages from all defendants in the millions. *Id.* ¶¶ 109, 131, 167, 190, 200, 220, 243.

### LEGAL STANDARD

Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave to proceed in forma pauperis, courts must engage in screening and dismiss any claims which: (1) are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek

---

[2] The Complaint does not provide Deputy Chan's first name.

6

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings that lack such statement have failed to state a claim.

In determining whether a plaintiff fails to state a claim, the court assumes that all factual allegations in the complaint are true. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions [and] mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pertinent question is whether the factual allegations, assumed to be true, "state a claim to relief that is plausible on its face." *Id*. at 678 (citing *Twombly*, 550 U.S. at 570).

Thus, to meet this requirement, the complaint must be supported by factual allegations. *Id.* Further, a complaint is frivolous under § 1915 where there is no subject matter jurisdiction. *See Pratt v. Sumner*, 807 F.2d 817, 819 (9th Cir. 1987) (recognizing the general proposition that a complaint should be dismissed as frivolous under § 1915 where subject matter jurisdiction is lacking).

Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)). Further, when it dismisses the complaint of a pro se litigant with leave to amend, "the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). "Without the benefit of a statement of deficiencies, the pro se litigant will likely repeat previous errors." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

**DISCUSSION**

**I. CLAIMS AGAINST STATE COURT JUDGES ARE BARRED BY JUDICIAL IMMUNITY**

State court judges are absolutely immune from civil liability for damages for acts performed in their judicial capacity. *See Pierson v. Ray*, 386 U.S. 547, 553–55 (1967) (applying judicial immunity to actions under 42 U.S.C. § 1983). Whether an act by a judge is a judicial one relates to (1) the nature and function of the act and not the act itself, *i.e.*, whether it is a function normally performed by a judge, and to (2) the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *see also Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (other factors to consider in determining whether a particular act is judicial include whether the events occurred in the judge's chambers, whether the controversy centered around a case then pending before the judge, and whether the events arose directly and immediately out of a confrontation with the judge in his or her official capacity). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. at 356–57 (internal quotation marks and citation omitted); *see also Mireles*, 502 U.S. at 11 (judicial immunity is not overcome by allegations of bad faith or malice); *Sadorski v. Mosley*, 435 F.3d 1076, 1079 n. 2 (9th Cir. 2006) (mistake alone is not sufficient to deprive a judge of absolute immunity).

Judicial immunity generally is overcome only in two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *See Sadorski*, 435 F.3d at 1079 n. 2 (citing *Forrester v. White*, 484 U.S. 219, 227–29 (1988), and *Stump*, 435 U.S. at 360). Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *See Mireles*, 502 U.S. at 11 (citing *Forrester*, 484 U.S. at 356–57); *cf. Sadorski*, 435 F.3d at 1079 (Nevada judge who acted in excess of his jurisdiction when he modified a defendant's sentence to impose a longer term of incarceration "did not act in the clear absence of all jurisdiction," and is therefore entitled to

absolute immunity). As long as the judge has jurisdiction to perform the "general act" in question, he or she is immune however erroneous the act may have been, however injurious the consequences of the act may have been, and irrespective of the judge's claimed motivation. *See Harvey v. Waldron*, 210 F.3d 1008, 1012 (9th Cir. 2000).

Here, Bey brings claims against Judge Kiesselbach, Judge Woods, and Judge Caffese, each of whom is absolutely immune from civil liability. Each was acting in his or her judicial capacity. Judge Kiesselbach's order to stop Bey, as non-party, from disrupting proceedings between Cornejo and Public Storage in her courtroom was an act done within judicial capacity. Judge Woods's appointment of a public defender in Bey's criminal case and Judge Caffese's preliminary hearing in Bey's criminal case were also acts done within judicial capacity. None of these acts constitutes a nonjudicial action.

Second, none of the judicial actions was done without jurisdiction. Bey appears to argue lack of jurisdiction under a "sovereign citizen" theory because he considers himself a "Moorish-American National." Compl. ¶ 9. Adherents of such claims or defenses "believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011) (citations omitted). But "[c]ourts across the [United States] have uniformly rejected arguments based on [a] redemption theory or substantially similar theories," describing them as "frivolous, irrational [and] unintelligible." *Id.* (quoting *United States v. Ornelas*, 2010 WL 4663385, at *1 (S.D. Ala. Nov. 9, 2010). In particular, courts have rejected similar "sovereign citizen" arguments brought by others who describe themselves as "Moorish-American." *See, e.g.*, *Bey v. State of Indiana*, 847 F.3d 559, 561 (7th Cir. 2017) (rejecting plaintiff's claim that state officials should be enjoined from taxing his real estate because he is a "Moorish-American"). In *Bey v. State of Indiana*, the Seventh Circuit concluded that plaintiff "may be a Moor but – we emphasize, in the hope of staving off future such frivolous litigation – he is not a sovereign citizen. He is a U.S. citizen and therefore unlike foreign diplomats has no immunity from U.S. law. Indeed his suit is frivolous and was therefore properly dismissed; he was lucky to be spared sanctions for filing such a suit." *Id.* at 5–6; *see also Bey v. Peltier*, No. 17-

cv-2552-FMO, 2018 WL 1858189, at *2 (C.D. Cal. Jan. 25, 2018), *report and recommendation adopted,* No. 17-cv-2552-KS, 2018 WL 851291 (C.D. Cal. Feb. 12, 2018) (dismissing plaintiff's claim that she is not required to abide by municipal codes because she is a Moorish American). Bey's claims against Judge Kiesselbach, Judge Woods, and Judge Caffese are dismissed with prejudice.

## II. CLAIMS AGAINST STATE COURT CLERKS ARE BARRED BY JUDICIAL IMMUNITY

The United States Supreme Court has recognized that some officials perform special functions which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268–69 (1993). This immunity extends to individuals performing functions necessary to the judicial process. *Miller v. Gammie*, 335 F.3d 889, 895–96 (9th Cir. 2003). Under the common law, judges, prosecutors, trial witnesses, and jurors were absolutely immune for such critical functions. *Id.* at 896. The court has taken a "functional approach" to the question of whether absolute immunity applies in a given situation, meaning that it looks to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (1993) (quoting *Forrester*, 484 U.S. at 229). Thus, state actors are granted absolute immunity from damages liability in suits under § 1983 only for actions taken while performing a duty functionally comparable to one for which officials were immune at common law. *Miller*, 335 F.3d at 897.

The Ninth Circuit holds that clerks of court have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process. *See, e.g.*, *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996); *Morrison v. Jones*, 607 F.2d 1269, 1273 (9th Cir. 1979), *cert. denied,* 445 U.S. 962 (1980); *see also Sharma v. Stevas*, 790 F.2d 1486, 1486 (9th Cir. 1986).

Here, Bey brings claims against two state court clerks. He claims that Melinka Jones refused to accept some unspecified documents in an unspecified matter and that Frances Yokota denied him access to court records. Compl. ¶¶ 105, 106. Both clerks are immune given these

actions were an integral part of the judicial process. Bey's claims against both clerks are dismissed with prejudice.

## III. CLAIMS AGAINST DISTRICT ATTORNEY ARE BARRED BY PROSECUTORIAL IMMUNITY

State prosecuting attorneys enjoy absolute immunity from liability under § 1983 for their conduct in "pursuing a criminal prosecution" insofar as they act within their role as an "advocate for the State" and their actions are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). But prosecutors are entitled only to qualified immunity when they perform investigatory or administrative functions, or are essentially functioning as police officers or detectives. *Buckley*, 509 U.S. at 273. Prosecutors are entitled to absolute immunity for securing a grand jury indictment, an information and an arrest warrant. *See Milstein v. Cooley*, 257 F.3d 1004, 1011-13 (9th Cir. 2001).

Here, Bey brings claims against George Gascon, the San Francisco County District Attorney for filing a felony complaint against him. This is an act that is clearly covered in prosecutorial immunity. Bey's understanding of the criminal justice system seems lacking as it appears he thinks that Brenneman and Lee should have been the "plaintiffs" in his criminal case and that the "state of California" has no interest as a party. Bey's claims against Gascon are dismissed with prejudice.

## IV. INJUNCTION AGAINST THE STATE OF CALIFORNIA IS NOT FEASIBLE

Bey also seeks to enjoin the state of California from "exercising judicial and executive powers" over him and from "prosecuting [him] under the facts and claims in the said matter *People v. Bey*." Compl. ¶ 248. According to Bey's subsequent pleading, entitled "Affidavit of Facts of Jamil Malik Bey in Support of Preliminary Injunction", Bey appears to withdraw his motion for temporary restraining order because "the matter of the TRO is now Moot on the basis that the 'criminal' charges have been dropped." Bey's Affidavit ¶ 8. Instead, because the charges were dropped without prejudice, he appears to now seek an "order to show cause why a preliminary injunction should not issue enjoining the Respondent George Gascon and the People of the State form bringing any new and additional charges stemming from the same facts of this

11

case, or on different facts should issue instead." *Id.* I construe this as Bey withdrawing his motion for a temporary restraining order and instead seeking a preliminary injunction.

Bey cannot seek an injunction against all future prosecutions. Bey's argument seems to be based on the "sovereign citizen" theory that the state of California has "no jurisdiction" over him as a "Moorish American," a theory that has been rejected by multiple courts. *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011) (citations omitted). In *Bey v. State of Indiana*, the Seventh Circuit rejected the plaintiff's claim that state officials should be enjoined from taxing his real estate because he is a Moorish-American. 847 F.3d at 561. Similarly, here, Bey cannot seek to enjoin the state of California from prosecuting him because he is a Moorish-American. Bey has no immunity from U.S. and state law. Accordingly, Bey has failed to state a claim that would warrant injunctive relief.

## V. CLAIMS AGAINST SAN FRANCISCO SHERIFF AND DOE DEPUTIES ARE FRIVOLOUS AND BARRED BY QUALIFIED IMMUNITY

### A. Claims against San Francisco Sheriff Hennessey

Proof of an individual defendant's personal involvement in the alleged wrong is a prerequisite to their liability on the claim for damages under § 1983. However, a supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983."). Moreover, state actors may be liable under § 1983 only if they were personally involved in the acts causing the deprivation of constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Malone v. Rainey*, No. C-92-1619 EFL, 1994 WL 62063, at *4 (N.D. Cal. Feb. 11, 1994).

Here, Bey brings claims against Vicki L. Hennessey, the San Francisco Sheriff. Compl. ¶ 23. Bey has not alleged any facts regarding Sheriff Hennessey's personal involvement in the wrongs allegedly committed by doe deputies. A supervisory official, like Sheriff Hennessey, cannot be held liable pursuant to § 1983 under a theory of *respondeat superior*. Accordingly, claims against Sheriff Hennessey are dismissed without leave to amend.

12

### B. Claims against Doe Deputies

Bey brings Fourth Amendment claims against twenty doe deputies of the Sheriff's Department, two of which he refers to with no first name as "Deputy Nunes" and "Deputy Chan." These claims stem from two incidents – (i) when deputies, particularly Deputy Nunes, reprimanded Bey pursuant to orders by Judge Kiesselbach directing Bey to stop disrupting and recording the small claims proceedings held on March 30, 2018; and (ii) when deputies, particularly Deputy Chan, arrested Bey following the September 5, 2019 incident where Lee and Brenneman claimed Bey made criminal threats against them. Compl. ¶¶ 209, 235. Bey also brings Eighth Amendment claims arising from the second incident. Compl. ¶¶ 216–17.

#### 1. Claims against sheriff deputies for seizing Bey's recording device during courtroom proceedings.

Bey claims that the first incident violates the Fourth Amendment because his digital recorder was seized from Cornejo's purse without a warrant and without probable cause. Compl. ¶ 235. Rule 1.150 of the California Rules of Court provide that a person "proposing to use a recording device must obtain advance permission from the judge," and violations are considered an "unlawful interference with proceedings of the court and may be the basis for . . . a citation for contempt of court." Cal. R. of Ct. 1.150(d) and (f). Here, deputies seized Bey's digital recorder pursuant to Judge Kiesselbach's order. Given Bey sought to record without prior permission, Judge Kiesselbach's order was appropriate as Bey could have been held in contempt of court.

Even if I found that the deputies did not have probable cause to seize Bey's digital recorder, the claims are barred on the basis of qualified immunity. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). It "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Bey has not identified any case demonstrating that any of the deputies violated clearly established law when his recording device was confiscated in contempt of court. *See Holland v.*

*Azevedo*, No. 14-CV-01349-JST, 2016 WL 1754446, at *8 (N.D. Cal. May 3, 2016) ("Plaintiff had no constitutional right, much less a clearly established one, to disregard Defendants' lawful orders or to do so without the consequence of arrest under these circumstances."). Deputies were acting pursuant to Judge Kiesselbach's orders to seize Bey's personal recording device as Bey seemingly had not received prior permission to use it and did not put it away upon warning. Compl. ¶ 63. Applying qualified immunity under these circumstances strikes the "proper balance between . . . vindication of constitutional guarantees . . . [and] substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Rose v. Fortuna Police Dep't*, No. 3:17-CV-01018-WHO, 2018 WL 747011, at *5 (N.D. Cal. Feb. 7, 2018) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017)).

### 2. Claims against sheriff deputies for arresting Bey for alleged criminal threats against Lee and Brenneman.

Bey claims that the second incident violated the Fourth Amendment because officers arrested him without a warrant and without probable cause after Lee and Brenneman claimed that Bey made criminal threats against them. Compl. ¶¶ 209, 210. Following the September 5, 2018 hearing in small claims court, Lee and Brenneman claim that Bey physically threatened them and told them that he would come after them and kill them. *See* Ex. I (Lee's letter to Judge Kahn on September 5, 2018). Lee and Brenneman made a police report, which Bey claims is false. Compl. ¶ 42; *see also* Ex. G (copies of San Francisco Sheriff's Department forms for arrest by private person filled out by Lee and Brenneman). It is unclear whether the subsequent arrest of Bey was with or without a warrant. Bey claims Lee approached Judge Kahn to issue a warrant and that when Judge Kahn purportedly denied, Lee procured a warrant from Judge Kiesselbach. Compl. ¶ 82.

Regardless, even if the arrest was without a warrant, the underlying crime involved a felony of criminal threats, in violation of California Penal Code § 422. *See* Ex. J (copy of felony complaint in *People of California v. Bey*, Case No. 18-012876). A warrantless arrest must be supported by probable cause, which exists "when, under the totality of circumstances known to the

14

arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had commited a crime." *Peng v. Penghu*, 335 F.3d 970, 976 (9th Cir. 2003). Accepting Bey's version of the facts as true, Bey has not sufficiently alleged that the deputies lacked probable cause to believe that his threat was sufficiently unequivocal and imminent to constitute a crime. The exhibits attached to Bey's complaint show that the deputies received police reports from Lee and Brenneman recounting the incident. *See* Ex. G. Thus, Bey has failed to state a claim against the deputies regarding the first incident.

Even if probable cause was lacking, the claims against the deputies are barred on the basis of qualified immunity because the deputies were reasonable in concluding that they had probable cause. Similar to the first incident, applying qualified immunity to these circumstances strikes the "proper balance" between constitutional protections and substantial social costs. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017).

Bey also claims that deputies who arrested him violated the Eighth Amendment because the deputies allegedly deprived him of food as a method of coercion to force him to sign a contract agreeing to provide a DNA sample from his mouth. Compl. ¶ 216. He further alleges that deputies placed a pen in his hand and attempted to force him to sign the contract agreeing to provide a DNA sample from his mouth. *Id.* ¶ 217. Looking at the Complaint as a whole, I find these allegations insufficient for purposes of § 1915(e) to state a § 1983 claim for an Eighth Amendment violation by doe deputies.

## VI. CLAIMS AGAINST LEE AND BRENNEMAN LACK JURISDICTION

As to Bey's state law claims against Lee and Brenneman for fraud, malicious abuse of process, libel and slander, I decline to exercise supplemental jurisdiction over them in light of the dismissal of Bey's federal claims. *See* 28 U.S.C. § 1367(c)(3).

## VII. INTERNATIONAL LAW CLAIMS LACK JURISDICTION

In addition to Bey's federal law and state law claims, Bey also brings claims under Part 2 Article 2 Section 3(a) of the International Covenant on Civil and Political Rights ("ICCPR"). Compl. ¶ 6. The ICCPR is not binding on this court because it is not self-executing. *Serra v. Lappin*, No. C07-01589 MJJ, 2008 WL 929525, at *6 (N.D. Cal. Apr. 3, 2008), *aff'd,* 600 F.3d

1191 (9th Cir. 2010); *see also Cornejo v. County of San Diego*, 504 F.3d 853, 856–57 (9th Cir. 2007) ("For any treaty to be susceptible to judicial enforcement it must both confer individual rights and be self-executing."); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 728 (2004) (citing the ICCPR as an example of non-self-executing, and thus non-enforceable, treaties). The ICCPR is therefore not enforceable law and does not provide Bey with a legal claim or remedy.

## CONCLUSION

For the reasons stated above, Bey's claims against all defendants are DISMISSED without leave to amend. Bey's motion for temporary restraining order is DENIED as moot. Judgment shall be entered in accordance with this Order.

**IT IS SO ORDERED.**

Dated: October 15, 2019

William H. Orrick
United States District Judge